JOHN I. PRESTON & another vs. HARRY F. PECK.

Middlesex.    March 4, 1930. — April 4, 1930.

Present: RUGG, C.J., CARROLL, WAIT, SANDERSON, & FIELD, JJ.

*Probate Court*, Conduct of hearing.

It was error for a judge of probate, hearing a petition for the proof of a
will, after subscribing witnesses had testified that they saw the testator
sign the will and a qualified handwriting expert, called by the re-
spondent, had testified from an examination of the signature to the
will and standards of his handwriting in evidence that the signature
to the will was not that of the testator and had begun to give his
reasons for his opinion, and the respondent's counsel had stated that
he had a second expert to testify to the same effect, to rule that he
had "made up" his mind and that "no expert is going to change my
opinion on that matter", and that he was "satisfied from the evidence
produced, regardless of what the expert witnesses" might say, that
the testator "signed the will in the presence of these three witnesses";
and, on appeal by the respondent from a decree allowing the will, the
decree was reversed and the petition remanded for further hearing
in the Probate Court.

PETITION, filed in the Probate Court for the county of
Middlesex on June 17, 1929, for proof of the will of Nannie
E. Wyman, late of Lynnfield.

The petition was opposed by Harry F. Peck, a brother
of the decedent, and was heard by *Campbell*, J., a stenog-
rapher having been appointed under the statute to take the
evidence.   The colloquy between the judge and counsel in
the course of which the ruling was made and the exception
saved as described in the opinion, was as follows:  "The
JUDGE.  Well, I was just wondering how far I ought to be
satisfied, regardless of what the expert will testify to, that
three people have come here and committed perjury, and
the expert is correct.   That is the whole issue, is it not?
The RESPONDENT'S COUNSEL.  Yes, your Honor.  The JUDGE.
It simmers down to that, after all has been said, either
these three people are perjurers because they have all testi-
fied they saw this woman sign her name to this will in ques-

tion, or the expert is mistaken, because the expert comes in and says it is not her signature, that it is a forgery by someone. Should I, on the one hand, disregard the testimony of all three witnesses and believe that of the expert, regardless of what he says about it? The RESPONDENT'S COUNSEL. I suppose you have got to hear all the evidence, your Honor. The JUDGE. I suppose you are justified in not having me stop the matter. You have a right to put in whatever evidence you see fit, but I can frankly state now that I will be slow, to say the least, to disregard three witnesses in preference to one in regard to expert testimony on handwriting, and unless I change my mind considerably, I am inclined to take the testimony of the three living subscribing witnesses that they did see the parties sign the names. With that understanding, you have a right to proceed with the testimony, but I frankly say now that I cannot see my way clear, no matter what the expert witness says, to say that this woman did not sign that will. But, I do not mean by that that you must stop with your examination of this witness, but I thought I might as well tell you just how I felt about it, and I do not believe, no matter what he said, it would change my mind the slightest, and I would find that she did sign this will in the presence of these witnesses. I am just making that so there may be some time saved if you knew what I felt about it. The RESPONDENT'S COUNSEL. We not only have this handwriting expert, but we have Mr. Hingston, the other well known handwriting expert of Boston. The JUDGE. I do not question the experts' knowledge, but I cannot make myself believe that three people, who appear to me to be honest, with nothing at stake, are coming in here and deliberately perjuring themselves in a matter of this kind. If you can show me any motive why they should do it — but none has been shown up to this time — it might be a different matter, but without a motive for three people, who had not seen this testatrix in their lives, hardly, it seems so far fetched that I cannot make myself believe that I should throw their testimony out of the window and believe the expert witness. That is my feeling in the matter. The RESPONDENT'S COUN-

SEL. I do not like to start to argue a case in the middle of it, but it has been my theory as I prepared for this case, that this typewritten will was probably drawn by Mr. Preston on the orders of Mrs. Wyman, but she never got around to signing it, and I think if your Honor has the patience to listen to this expert he will show you how this thing — The JUDGE. I have all the patience in the world, and have all the time necessary, but what is the use of going over the thing when my mind is already made up. I have made up my mind. I am going to believe the three witnesses did see the woman sign, and no expert is going to change my opinion on that matter, and that is a good way for it to go to the Supreme Court, if you would like to have it go there. That is all there is to it. . . . Perhaps I am taking a little unusual stand in the matter, but I cannot see the wisdom of listening to expert testimony when it is going right over my head, and I am satisfied that the witnesses did see the woman sign. What is the sense of going all over this and for me to sit here and just listen and listen and listen, and by and by allow the will. I do not see much sense in doing that. I am satisfied that these three witnesses did not commit perjury here today, and, if that is so, what value is the expert testimony to me? The RESPONDENT's COUNSEL. Well, we have this other witness, your Honor, and he will be here, I expect, by the time that I anticipated counsel for the will would be through with Mr. Turner. I had expected him to testify to substantiate what Mr. Turner said, but, if your Honor desires to enter a decision now and suspend Mr. Turner and Mr. Hingston — The JUDGE. I am willing to enter a decision and end the matter as far as my opinion is going to be, in reference to the signature of this testatrix. I am satisfied from the evidence produced, regardless of what the expert witnesses may say, and I say "regardless" with meaning, I would still say she signed the will in the presence of these three witnesses, no matter what they testified. The PETITIONER's COUNSEL. We will agree that Mr. Hingston, if present, would substantiate the substance of what Mr. Turner says. The RESPONDENT's COUNSEL. No,

I cannot enter into any such agreement. The PETITIONER'S COUNSEL. You cannot have anything any stronger. The RESPONDENT'S COUNSEL. Might I save an exception, your Honor? The JUDGE. Surely. The RESPONDENT'S COUNSEL. To the statements of the court on this matter. The JUDGE. Yes. The RESPONDENT'S COUNSEL. And, with my right of appeal, I do not see the necessity of going any further. The JUDGE. And, I will assume, for the purpose of the record, that your other expert witness would testify and substantiate what Mr. Turner has now testified to, and what he would have testified to if he were allowed to go on further."

After the colloquy, the respondent's counsel did not call the second expert. The counsel who drew the will, however, was called by the respondent and testified both in direct and cross-examination. A final decree was entered allowing the will. The respondent appealed.

*J. J. Donahue,* (*J. J. Butler* with him,) for the respondent.

*A. H. Garcelon,* (*J. I. Preston* with him,) for the petitioners.

SANDERSON, J. This is an appeal from a decree of the Probate Court allowing an instrument as the will of Nannie E. Wyman. The appellant, who was not named therein, is the only heir at law and next of kin of the person whose name purports to be signed to the document. The sole contest related to the due execution of the instrument, the appellant contending that the signature was a forgery.

After the three subscribing witnesses had testified that they saw the testatrix sign the alleged will, the contestant without objection introduced standards of her signature and exhibited to the court photographs of the standards and an enlarged photograph of the questioned signature. The contestant then offered evidence through a handwriting expert, whose qualifications were admitted by the proponents, who testified that he had examined the signatures admitted as standards and the questioned signature, and as a result of microscopic study had reached the opinion that the signature to the will was not written by Nannie E. Wyman, but that it was a copy from one of the standards

introduced in evidence, a simulated signature, a drawing. The witness then began to give his reasons for this opinion, and upon objection being made to certain of his statements the judge said in substance that from the testimony of the witnesses to the signature he had made up his mind that Mrs. Wyman had signed the will and that anything the witness on the stand and another expert in handwriting, whom the contestant desired to call, might say about the signature would not affect his decision on the matter and that it would be a waste of time to go on with this expert testimony. The contestant saved his exception to the statements of the judge and appealed from the decree approving and allowing the will.

The testimony of experts on handwriting was competent on the issue being tried. In *Demerritt* v. *Randall*, 116 Mass. 331, 332, in which a similar issue was involved, the court, speaking through Gray, C. J., said: "The experts were rightly permitted to testify to their opinion of the genuineness of the signature of the testatrix, and to their reasons for such opinion." See *Richardson* v. *Newcomb*, 21 Pick. 315; *Marcy* v. *Barnes*, 16 Gray, 161; *Coddaire* v. *Sibley*, 270 Mass. 41. The introduction of evidence of this nature might be the only method available to prove a forged signature to a will. In *Wade* v. *Lobdell*, 4 Cush. 510, 512, the court said: "If a court of probate must pass upon matters involving questions of fact . . . they must inquire into the truth of such facts judicially, and for that purpose admit all competent evidence. Were it otherwise, a paper, purporting to be signed by a party to be affected by it, must be taken not only to be genuine, but to be conclusive, without regard to the circumstances under which it was obtained." In *Union Trust Co.* v. *Magenis*, 266 Mass. 363, 365, the court said: "It is contrary to fundamental principles of administration of justice according to the common law to decline to hear all pertinent evidence offered by counsel." The duty of a magistrate to hear all competent evidence requires as a necessary incident of that duty that he shall hear the evidence with an open mind and not reach a final conclusion upon the issue until he has heard

all evidence bearing upon it which a party is prepared to offer and has a right to introduce. In *Dittemore* v. *Dickey,* 249 Mass. 95, 100, the court, in referring to the duty of a master, said: "His mind ought always to be open to the truth and susceptible to every right influence flowing from the evidence." If a judge reaches a decision on an issue of fact before the testimony on that issue is completed and thus closes his mind to a fair consideration of competent evidence not yet heard, he has deprived the party of his right to a full and fair hearing upon the whole evidence. Even if the judge did not exclude testimony offered or forbid counsel to proceed further, his statement to the effect that he had made up his mind and was going to believe that the witnesses saw the woman sign and no expert could change that opinion made the introduction of further testimony from the handwriting experts a useless ceremony. A desire on the part of a judge to expedite trials and avoid a waste of time is commendable, but upon the facts disclosed by this record such a motive would not justify the trial judge in announcing his decision on the main issue in the case before he had fully heard competent testimony which the contestant was prepared and had a right to introduce.

*Decree reversed.*
*Case to stand for further hearing.*