## ADOPTION OF GEORGIA & another.[1]

Franklin-Hampshire. November 7, 2000. - December 14, 2000.

Present (Sitting at Brockton): MARSHALL, C.J., ABRAMS, GREANEY, IRELAND, SPINA, COWIN, & SOSMAN, JJ.

*Judge. Adoption,* Care and protection, Dispensing with parent's consent. *Court Appointed Special Advocate. Parent and Child,* Care and protection of minor, Dispensing with parent's consent to adoption. *Evidence,* Report of licensed social worker, Hearsay.

In a proceeding to dispense with parental consent to adoption, the judge's remarks in a colloquy with counsel concerning the scope of the contested issues in the case did not demonstrate that she had concluded before hearing all the relevant evidence that the mother was unfit. [63-65]

In a proceeding to dispense with parental consent to adoption, the judge's findings were supported by clear and convincing evidence, and she properly concluded that the mother was unfit to further the welfare and best interests of the child. [65-66]

There was no merit to the claim of a parent, in a proceeding to dispense with parental consent to adoption, that the Department of Social Services had failed in its duty to strengthen and encourage the family unit. [66-67]

Discussion concerning the genesis and nature of the court appointed special advocate program that provides assistance in civil child protection proceedings. [67-68]

In a proceeding to dispense with parental consent to adoption, the judge correctly considered the report of a court appointed special advocate (CASA), who was also specifically appointed as a guardian ad litem, where the CASA was available to testify at trial and where the source of the information was sufficiently identified so as to provide an opportunity to rebut adverse or erroneous material contained therein. [68-69]

PETITION filed in the Franklin and Hampshire Counties Division of the Juvenile Court Department on November 29, 1996.

The case was heard by *Lillian Miranda, J.*

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Patricia Quintilian* for the mother.

---

[1]Her sister, Jane. The names assigned to the children are pseudonyms. Georgia was seven years old at the time of trial and Jane was nine years old.

*Katherine M. Potter* (*Richard A. Salcedo* with her) for Department of Social Services.

*Mary A. Samberg* for the children.

*Jinanne S.J. Elder & Janet McGowan,* for National Court Appointed Special Advocate Association & another, amici curiae, submitted a brief.

GREANEY, J. Mary (a pseudonym), the mother of Georgia and Jane, appeals from a decision of the Franklin-Hampshire Division of the Juvenile Court Department entered in a combined proceeding that adjudicated Georgia and Jane in need of care and protection and dispensed with the need for Mary's consent to their adoption.[2] Represented by new counsel on appeal, Mary (1) argues that the judge prejudged the case before all the evidence was submitted, so that a new trial is required; (2) makes a series of arguments that the judge's decision fails to credit her with personal qualities reflecting her fitness as a mother, and is not supported by clear and convincing evidence; (3) claims that the Department of Social Services (department) failed in its duty to strengthen and encourage the family unit; and (4) asserts that the judge improperly admitted in evidence the testimony and report of a court appointed special advocate (CASA) in the absence of authority to do so. We transferred the case to this court on our motion primarily to consider the argument concerning the CASA report. We reject Mary's arguments and direct the entry of an appropriate decree.[3]

1. At the conclusion of the first day of trial,[4] the judge engaged in a colloquy with counsel concerning the scope of the contested issues in the case. Trial counsel for Mary indicated that her client "wants custody" of the children and that she intended to put on a case on the merits. The following exchange then took place between the judge and Mary's trial counsel:

> THE JUDGE: "Well, at this point, the evidence is so compelling. For two years — two and a half years, this woman has not been able to handle the children more than three days in a row. I mean just because she recognizes it

---

[2]The children's father voluntarily surrendered them for adoption and is not a party to this appeal.

[3]The judge's decision contained findings of fact, conclusions of law, an adjudication, and an order for a decree, but no decree has been formally entered.

[4]The trial lasted six days and spanned a period in excess of five months.

— that's a wonderful thing that she recognizes it, but that doesn't make her able to do that — 24 hours a day, 7 days parenting.

"I mean the recognition that she's stressed out and that she was able to at least understand that and bring the children back doesn't make her able to do the parenting that she, even in her own words, says is required — 24 hours a day, 7 days a week.

"And if you're going to say that her testimony is going to be that she's stabilized on antipsychotic medication and that's why she can parent — is that the evidence that you're going to present?"

MARY'S TRIAL COUNSEL: "It's actually antidepressant medication."

THE JUDGE: "There's a pattern of being on and off it for years that we have here. Certainly, she has every right to go through this hearing. I want to be clear about what we're going through the hearing for. This juncture, I mean, I think the evidence is compelling. You know the standard.

"It may change. I know we only have probably a fifth of the evidence in. And I just don't want people to have to sit here and go through this. It's painful for everyone. If that's the issue. And if it's not the issue, fine.

"Certainly, I would lean to the department for an open adoption if that were the only issue. That, I guess, is what I would like you to know. Okay?"

MARY'S TRIAL COUNSEL: "We understand that. And it has not changed that we've been — that we've known open adoption is available. And they know what her position is as well. And that, of course, could change at any time."

THE JUDGE: "All right."

Based on the above, Mary argues that she was denied a full and fair trial because the judge had concluded, before hearing all the relevant evidence, that Mary was an unfit mother. We disagree.

Mary correctly points out that, "[i]f a judge reaches a deci-

sion on an issue of fact before the testimony on that issue is completed and thus closes [her] mind to a fair consideration of competent evidence not yet heard, [she] has deprived the party of his right to a full and fair hearing upon the whole evidence." *Preston* v. *Peck*, 271 Mass. 159, 164 (1930). This principle, however, does not apply here because the judge's comments, read in context, show that she was attempting to determine the precise issues in dispute so the trial could proceed without unnecessary delay. While the judge should have refrained from making comments about the strength of the evidence she had just heard, the judge acknowledged that the evidence "may change" and that much more evidence would be presented. The judge thus indicated that she had an open mind on the whole case and had not conclusively decided the issue of Mary's parental fitness. Contrast *id.* (judge's "statement to the effect that he had made up his mind and was going to believe [a certain witness] . . . and no expert could change [the judge's] opinion" made the introduction of further testimony "a useless ceremony"). We take note of the fact that the respondent's trial counsel made no objection to the remarks and filed no motion for a mistrial. The facts disclosed by the record show that the judge sought to expedite the trial but not that she had prejudged the main issue.[5]

2. Mary's next series of arguments center on the adequacy of the judge's decision that Mary claims overlooked relevant considerations and is not supported by clear and convincing evidence.

The standards governing the judge's decision are as follows. To determine whether to dispense with parental consent to adoption, the judge must evaluate whether the parent can assume the duties and responsibilities required of a parent and whether

[5]The respondent's appellate counsel points to two other instances that are said to bolster the argument that the judge had decided that Mary was unfit before all the evidence had been heard. Neither instance adds anything of merit. Mary testified that what the judge had said on the first day of trial prompted her to move to Florida. The judge cautioned Mary that "I'm not quite sure that I said what you said [I said] on the stand" (Mary testified some five months after the first day of trial), but the judge went on to explain that, at the start of the case, she was endeavoring to encourage the parties to reach an agreement. The judge's explanation supports our conclusion that she had not prejudged the case. The second instance concerns the judge's efforts to move beyond evidence that was repetitive of evidence already in the case. The judge in this instance was acting as a proper manager of the trial.

dispensing with consent will be in the best interests of the child. See G. L. c. 210, § 3; *Adoption of Mary*, 414 Mass. 705, 710 (1993). Before a judge may remove custody from a parent and award it to the department, the judge must find, by clear and convincing evidence, that the natural parent is unfit to further the welfare and best interests of the child. See *Care & Protection of Stephen*, 401 Mass. 144, 150 (1987); *Custody of Two Minors*, 396 Mass. 610, 619 (1986). Subsidiary findings must be proved by a fair preponderance of the evidence. *Adoption of Quentin*, 424 Mass. 882, 886 (1997). We do not disturb these findings absent a showing that they are clearly erroneous. *Petition of the Dep't of Social Servs. to Dispense with Consent to Adoption*, 397 Mass. 659, 670 (1986). Even so, we require that the judge's findings be specific and detailed, so as to demonstrate that close attention was given to the evidence. *Adoption of Hugo*, 428 Mass. 219, 224 (1998), cert. denied sub nom. *Hugo P. v. George P.*, 526 U.S. 1034 (1999); *Custody of a Minor (No. 1)*, 377 Mass. 876, 886 (1979).

The department met its burden of proving Mary's unfitness by clear and convincing evidence. The judge made ninety-seven findings of fact, each of which is supported by the evidence. The findings establish that Mary's long-term history of substance abuse and mental illness (the latter of which continued through trial), combined with patterns of ongoing, repeated, and serious parental neglect, abuse, and misconduct, made her an unfit parent. We reject Mary's argument, for lack of support in the record, that the judge did not adequately consider Mary's efforts to comply with the department's service plans. The judge was warranted in finding and concluding that, while Mary had made progress in some areas, she "had made no progress in ways that would assist her in getting her children back." Similarly, in reaching her decision, the judge did not overlook Mary's personal qualities. The judge was warranted in finding that the qualities stressed by Mary were refuted by the evidence. The judge properly took into account that, notwithstanding Mary's many difficulties, she had a close relationship with her children that justified an order giving Mary rights of postadoption visitation.

3. Mary's argument that the department failed to fulfil its duty to strengthen and encourage the family unit lacks merit. The record indicates that the department worked diligently, but without success, to attempt to address Mary's difficulties so that

the family could be reunited. See *Adoption of Abigail,* 23 Mass. App. Ct. 191, 197 (1986). It is apparent from the judge's decision that the additional services Mary claims she should have received from the department (day care and substitute transportation) would not have solved her chronic problems.

4. Fourteen witnesses testified at the trial. The witnesses included a clinical psychologist, Mary's psychiatrist, a court appointed investigator, and a CASA (court appointed special advocate). The reports of the investigator and the CASA were admitted in evidence. Mary argues that the testimony and the report of the CASA should not have been considered because there is no authority allowing such evidence and its admission placed inadmissible hearsay and opinion testimony before the judge. We disagree.

In 1974, Congress passed the Child Abuse Prevention and Treatment Act, which recognized a child's need for independent representation in civil child protection proceedings and required that "in every case involving an abused or neglected child which results in a judicial proceeding a guardian ad litem shall be appointed to represent the child in such proceedings." Pub. L. No. 93-247, § 4(b)(2)(G), 88 Stat. 4 (1974). See 42 U.S.C. §§ 5101-5107 (1994). Thereafter, the CASA program was formed, and in 1982 became a national association. See Alexander, Is There a New Guardian Ad Litem Just Around the Corner in Missouri?, 54 J. Mo. B. 242, 242-243 (1998) (providing historical overview of CASAs and CASA programs). In 1990, Congress passed the Victims of Child Abuse Act, which allocated Federal funds to start and expand CASA programs. *Id.* at 243. See 42 U.S.C. §§ 13011-13014 (1994). "The National CASA Association, a non-profit organization, provides technical assistance and research for the local CASA programs, which operate in forty-eight States. Each CASA volunteer receives extensive training conducted by the local CASA program. Training requirements vary from program to program, but an average course consists of approximately twenty hours of instruction. The instruction covers such topics as child sexual abuse, early childhood development, adolescent behavior, and advocacy techniques. CASAs receive instruction in courtroom procedure from the principals in the system — judges, attorneys, social workers, and court personnel." R.L. Ireland, Juvenile Law § 124, at 536-537 (1993).

CASAs are now utilized throughout the Juvenile Court

Department and in other Trial Court Departments, and "a CASA's investigation and report are intended to provide the court with assistance in deciding whether it is in the child's best interests to remain with his or her parents or guardians, or be placed in foster care, or be freed for adoption (i.e., parental rights terminated)." *Id.* at 536. "Once appointed, the CASA becomes an officer of the court . . . and could be considered the functional equivalent of a guardian ad litem." *Id.* The Appeals Court has "assume[d] without deciding that CASA reports are analogous to investigator's reports" under G. L. c. 119, § 21. *Adoption of Tina*, 45 Mass. App. Ct. 727, 733 n.11 (1998).

Here, the judge specifically appointed the CASA as a guardian ad litem. This is the more appropriate designation when a case, such as this one, already had an investigator, appointed under G. L. c. 119, §§ 21, 24, who made a report and testified. The judge had authority to appoint the CASA as a guardian ad litem both as matter of inherent authority, see *Buckingham* v. *Alden*, 315 Mass. 383, 389 (1944), and by authority derived from G. L. c. 201, § 34 (permitting courts to appoint guardians ad litem when minors become "interested . . . in the enforcement or defense of any legal rights"), and G. L. c. 215, § 56A (authorizing Probate and Family Court judges to appoint guardians ad litem in cases involving the care, custody, or maintenance of minor children and to make a report in writing to the court). The CASA's report was properly admitted.[6]

"Guardian ad litem reports may properly contain hearsay information. *Jones* v. *Jones*, 349 Mass. 259, 264 (1965). They are analogous to investigator's reports pursuant to G. L. c. 119, § 24, which we have held admissible even when multiple level

---

[6]Trial counsel for Mary objected to the qualifications of the CASA to testify and submit her report. A CASA is not qualified to testify and report simply by being a CASA, and when an objection is made to qualifications, the judge must first determine that the CASA is qualified before accepting testimony or a report from the CASA. Here, the judge must have had experience with the local CASA program. The CASA had been through a CASA training program and had worked for a period of one year. While the record could have been made more complete on the point, we conclude, consistent with the broad discretionary power given to a trial judge to qualify a witness who will express an opinion, see *Letch* v. *Daniels*, 401 Mass. 65, 66 (1987), the judge properly overruled the objection to the CASA's qualifications. We note as well (although the issue does not turn on the point) that the material in the CASA's report was almost entirely replicated by the other evidence, and that the judge's decision was based primarily on evidence other than the CASA's report.

hearsay (and clinical evaluations) have been contained therein. *Custody of Michel,* 28 Mass. App. Ct. 260, 265-267 (1990). *Custody of Tracy,* 31 Mass. App. Ct. 481, 483-487 (1991). All that is required is that the guardian ad litem be available to testify at trial and that the source of the material be sufficiently identified so that the affected party has an opportunity to rebut any adverse or erroneous material contained therein. *Gilmore* v. *Gilmore,* 369 Mass. 598, 604-605 (1976). *Adoption of Carla,* 416 Mass. 510, 514 (1993). *Custody of Michel,* [*supra* at 266]. See *Custody of Tracy,* [*supra* at 484-487]." *Adoption of Sean,* 36 Mass. App. Ct. 261, 263-264 (1994). The testimony and report of the CASA were handled in conformity with these procedures.

5. A decree is to be entered (a) determining that Georgia and Jane are in need of care and protection and dispensing with the need for Mary's consent to their adoption; and (b) incorporating any order that has been made, or that is appropriate, for post-adoption visitation of the children by Mary.

*So ordered.*