NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12339

CARE AND PROTECTION OF M.C.

Suffolk.     October 3, 2017. - April 9, 2018.

Present (Sitting at Greenfield):  Gants, C.J., Gaziano, Lowy,
Budd, Cypher, & Kafker, JJ.

Impoundment.  Minor, Care and protection.  Parent and Child,
     Care and protection of minor.  Constitutional Law, Waiver
     of constitutional rights, Impoundment order, Self-
     incrimination.  Witness, Self-incrimination.  Evidence,
     Communication between patient and psychotherapist.
     Practice, Civil, Care and protection proceeding,
     Impoundment order, Waiver.  Waiver.

     Civil action commenced in the Supreme Judicial Court for
the county of Suffolk on December 28, 2016.

     The case was reported by Lenk, J.

     Jeanne M. Kaiser (Bonnie G. Allen also present) for the
mother.
     Mark H. Bluver for the father.
     Steven Greenbaum, Assistant District Attorney, for the
Commonwealth.
     Scott R. Chapman, Committee for Public Counsel Services
(Jessica McArdle, Committee for Public Counsel Services, also
present) for the child.

GAZIANO, J.  In this case, we consider the appropriate standards and procedures for requests by the parties and the Commonwealth for the release of impounded records in a care and protection proceeding in the Juvenile Court.  The mother and the father are the subjects of a care and protection proceeding commenced in the Juvenile Court by the Department of Children and Families (department), and are defendants in criminal child abuse cases pending in the Superior Court.  The records from the care and protection proceeding, including the transcripts and exhibits from a trial to terminate parental rights, are impounded, pursuant to G. L. c. 119, § 38, and Juvenile Court Standing Order 1-84, Mass. Ann. Laws Court Rules, Standing Orders of the Juvenile Court, at 1107 (LexisNexis 2016).

The father sought access to impounded records from the care and protection proceeding in conjunction with his upcoming criminal trial.  The Commonwealth also sought access to the records for its use in preparation for both the father's and the mother's pending criminal trials.  The mother opposed portions of the father's motion, and opposed the Commonwealth's motion in its entirety.  The child opposed the release of any records on privacy grounds.  Concluding that both the father and the Commonwealth had met the burden of demonstrating that there was good cause to grant the requested relief from impoundment, a Juvenile Court judge allowed both motions.  After the mother's

application for relief in the Appeals Court was denied, she filed a petition for relief in the county court, pursuant to G. L. c. 211, § 3; the single justice reserved and reported the case to the full court.

In her report, the single justice asked the parties to address three specific issues, in addition to any other questions they thought relevant. Those issues are the following:

> "1. In determining whether Juvenile Court case records of care and protection proceedings should be released to the Commonwealth or a defendant in a related criminal proceeding, what standard should be used to evaluate the request for disclosure; whether the moving party or the party opposing disclosure has the burden of proof.

> "2. Where a party to a care and protection proceeding voluntarily has disclosed therapeutic communications and records in connection with that proceeding, whether the waiver of the statutory patient-psychotherapist privilege and the constitutional privilege against self-incrimination is limited in scope to the care and protection proceeding.

> "3. Whether standards and protocols similar to those applicable to discovery of third party documents in criminal proceedings, see Commonwealth v. Dwyer, 448 Mass. 122 (2006); Mass. R. Crim. P. 17, [378 Mass. 885 (1978),] should apply where the documents are sought by the Commonwealth or a defendant and consist of Juvenile Court case records of care and protection proceedings."

We conclude that, where a party to the proceeding or the Commonwealth seeks access to the impounded records of a care and protection proceeding in the Juvenile Court, the requestor bears the burden of demonstrating that the records should be released

under the good cause standard of Rule 7 of the Uniform Rules on Impoundment Procedure, Mass. Ann. Laws Court Rules, Uniform Rules on Impoundment Procedure, at 930 (LexisNexis 2016) (Rule 7).  If the proponent of release meets the good cause standard, records may be disclosed, for limited, confidential review and use, as the order in this case specified.  That these records may be discoverable, however, does not also make them admissible at a subsequent criminal proceeding.  Admissibility is a separate inquiry, best left, as the motion judge did here, to the trial judge, to weigh the multiple, at times competing, privacy interests and the constitutional rights involved.

We conclude further that a parent's decision to present evidence at a care and protection proceeding does not result in a waiver of the constitutional privilege against self-incrimination at other proceedings.  Accordingly, at a subsequent criminal trial, where the rights involved and the stakes at issue are quite different, a party may rely on the privilege against self-incrimination and choose not to testify.  In addition, we conclude that a parent's prior testimony at a care and protection trial is not admissible in a subsequent criminal proceeding.  Finally, as to the question whether the mother's waiver of her psychotherapist privilege at the care and protection proceeding would serve as a waiver of that privilege at a criminal trial, we conclude that the privilege is case-

specific. Should a parent decide to introduce his or her mental state as a defense at a subsequent criminal trial, the provisions of G. L. c. 233, § 20B (c), would be applicable to psychotherapist testimony introduced at a care and protection proceeding.

The judge in this case determined that the confidential records from the care and protection trial should be released to the father and to the Commonwealth, but were not to be copied or disclosed to others, and were to be returned to the court at the end of the criminal proceedings. He did not, however, discuss in his decision, nor appear to have considered, certain of the factors required in order to make a finding of good cause. That is understandable, as the judge had no definitive guidance on the proper standard of review in questions of release from impoundment in a care and protection trial. Accordingly, the matter is remanded to the county court for entry of an order vacating and setting aside the decision of the Juvenile Court judge and remanding the matter to the Juvenile Court for further proceedings consistent with this opinion.

1. Background. For purposes of this appeal, the parties agreed to the following facts. The mother and the father are defendants in criminal cases pending in the Superior Court. The charges arose out of allegations that the father injected a

caustic substance into the child's cecostomy tube.[1]  The father is charged with attempted murder, assault and battery on a child by means of a dangerous weapon, two counts of assault and battery on a child causing substantial injury, and two counts of assault and battery on a child by permitting substantial bodily injury.  The mother is charged with two counts of assault and battery on a child causing substantial injury and two counts of assault and battery on a child by permitting substantial bodily injury.

Based on related allegations, the department filed a care and protection petition on behalf of the child in the Juvenile Court.  A judge of that court held a trial on the department's care and protection petition on multiple days between May 2, 2016, and July 8, 2016.  The record from that hearing, including the transcripts and exhibits, is impounded.  See G. L. c. 119, § 38.

In June, 2016, the father, who was present throughout the course of the care and protection trial, filed a motion requesting access to records from that proceeding, specifically "1) A complete unredacted copy of the trial transcript . . . ; 2) All exhibits received by the [c]ourt in the referenced trial;

---

[1] A cecostomy tube is a thin tube placed in a child's abdomen where the child has a blockage in the intestines; it is used to flush stool out of the intestines.  Stedman's Medical Dictionary 331 (28th ed. 2006).

3) The [c]ourt investigator's report(s); 4) The [guardian ad litem (GAL)] report(s); [and] 5) All pleadings filed in the referenced case."  The father's motion stated that he needed the records to prepare for his criminal trial and argued that his "due process rights to a fair trial require that his criminal counsel be allowed to review the requested records."  The father added that "many, if not all of the witnesses who have testified for" the department in the care and protection proceeding would be called by the Commonwealth in the criminal case.  Moreover, the father argued that much of the material must be disclosed because it is exculpatory, and also must be released to prepare him to cross-examine the witnesses against him, pursuant to his right to cross-examination under the Sixth Amendment to the United States Constitution.  In October, 2016, the father filed a supplemental motion requesting access to the court's order, findings of fact, and conclusions of law in the care and protection trial.

In July, 2016, the Commonwealth moved to intervene in the care and protection proceeding and to obtain access to the impounded trial record, as well as the other documents in the file.  The Commonwealth asserted an interest in the litigation because it is prosecuting the father and the mother, in separate proceedings, for crimes allegedly committed against the child.  Specifically, the Commonwealth's motion sought access to witness

testimony and "[GAL reports], medical records, recordings and other relevant materials"; it asserted, without discussion, that the record in the care and protection proceeding "most likely provided significant information" that "is extremely relevant" to the criminal proceedings.

The mother opposed portions of the father's motion; she did not oppose his request for transcripts of testimony from witnesses called by the department, the GAL report, or the investigator's report, but did oppose release of a transcript of her own testimony, which concerned, inter alia, her communications with her psychotherapist.  The mother argued that the father had failed to show good cause and was "attempt[ing] to circumvent the more restrictive and robust criminal discovery rules that govern production of many of the same materials in the criminal case," which "is expressly prohibited by Rule 11 of the Uniform Rules [on] Impoundment [Procedure, Mass. Ann. Laws Court Rules, Uniform Rules on Impoundment Procedure, at 937 (LexisNexis 2016) (Rule 11)]."  The mother maintained further that her privacy interest in the testimony and the records of her psychologist, in conjunction with the lack of relevance of that material to the father's criminal trial, weighed against releasing it to the father.  She argued also that her testimony should not be released because it would not be admissible at the father's trial, where she retained the privilege not to testify.

The mother opposed the entirety of the Commonwealth's motion on other grounds. She asserted that the Commonwealth had failed to identify relevant documents, and that it was attempting to use the Juvenile Court to circumvent the ordinary procedure for obtaining third-party and confidential documents in the criminal proceedings. The mother argued that the Commonwealth had not shown good cause to obtain the medical records, medical testimony, and her own testimony, because that testimony and the records were protected by privilege in the criminal proceedings, notwithstanding her decision to testify at the trial on the termination of parental rights.

The child opposed both parties' motions on the ground of her privacy interests.[2]

After a hearing on the motions was held in August, 2016, the Juvenile Court judge allowed both the father's motions and the Commonwealth's motion. The judge found that the father and the Commonwealth "met their burden of showing good cause for the release of court records." In finding good cause, the judge relied on the child's interest in justice for her severe injuries and the parents' interest in just resolutions of their criminal cases. The court allowed the parties access to the

---

[2] On appeal, the child has changed position and now argues that the Juvenile Court judge's order should be affirmed as containing no abuse of discretion.

docket sheets, the transcripts, the evidence introduced at trial, and the judge's findings and decision in the care and protection proceeding.  Although he stated that the parties' motions were allowed, the judge's order permitted the release of "only trial records, not other files, including [GAL] reports not marked and admitted during the trial."  The judge stayed the order for ten days to allow any party to appeal.

In December, 2016, the mother filed an emergency petition to a single justice of the Appeals Court.  The single justice stayed the order allowing release of impoundment pending resolution of the petition, then denied the petition a few weeks later.  The mother then filed an emergency petition for relief in the county court, and a single justice of this court issued a stay of the order allowing release.  The single justice subsequently reserved and reported the case to the full court, and ordered the parties to address in their briefs the three issues quoted supra:  the standard the Juvenile Court should use in evaluating whether impounded records should be disclosed and which party should bear the burden; whether a waiver of patient-psychotherapist privilege in a care and protection proceeding, and a waiver to the privilege against self-incrimination, is limited in scope to that proceeding; and whether the standard for discovery of third-party documents in criminal proceedings,

see Commonwealth v. Dwyer, 448 Mass. 122 (2006), should apply to records in a care and protection case in the Juvenile Court.

2. Discussion. a. Appropriate standard of review. The Legislature has determined that care and protection proceedings are impounded and should be closed to the general public to protect the privacy of all of the parties. See G. L. c. 119, § 38.[3] To do so, Juvenile Court Standing Order 1-84, adopted by this court on May 8, 1984, provides:

> "All [J]uvenile [C]ourt case records and reports are confidential and are the property of the court. Reports loaned to or copied for attorneys of record, or such other persons as the court may permit, shall be returned to the court after their use or at the conclusion of the litigation, whichever occurs first. Said reports shall not be further copied or released without permission of the court."

Mass. Ann. Laws Court Rules, Standing Orders of the Juvenile Court, at 1107. The order effectuates the purpose of G. L.

---

[3] Following this court's decision in Care & Protection of Sharlene, 445 Mass. 756, 772 (2006), the Legislature amended the statute to allow public access to hearings in the Juvenile Court that are "related to court orders to not resuscitate or to withdraw life-sustaining medical treatment for children in the custody of the department under a care and protection order." See G. L. c. 119, § 38. See also Care & Protection of Sharlene, supra at 773-775 (Spina, J., concurring) (although statute closes all care and protection hearings, "[a hearing about withdrawing life support] does not implicate the public policy concerns that provide the basis for closing care and protection cases to the public because it involves no accusation of parental unfitness, remediation of parental unfitness, or stigma associated with parental unfitness that the child will carry with her through life. If the order to withdraw life support is made, it is expected that the child will not live to suffer any stigma").

c. 119, § 38 -- protecting the confidentiality of the parties --
by keeping the hearing and all records from public view.  See
Care & Protection of Sharlene, 445 Mass. 756, 772 (2006)
(standing order "unambiguously makes all Juvenile Court case
records the property of the court").

While all proceedings in the Juvenile Court are statutorily
impounded, Rule 11 provides that "[a]ny party or interested
nonparty may file a motion supported by affidavit for relief
from impoundment."  Beyond suggesting that "procedures set forth
[elsewhere] in these rules shall govern requests for relief from
impoundment to the extent practicable," Rule 11 does not provide
a standard to evaluate such a motion.

An examination of the other uniform rules on impoundment
procedure suggests one reasonable set of procedures that might
be practicable and appropriate in reviewing requests for the
release of records in a care and protection trial on termination
of parental rights.  Where records are not statutorily
impounded, Rule 7 contains a standard to be followed in order to
permit impoundment of a document that otherwise presumptively
would be public.[4]  Pursuant to Rule 7(a), "[t]he court may enter

---

[4] As stated, the presumption of the public's right of access
is reversed in care and protection proceedings.  Compare Care &
Protection of Sharlene, 445 Mass. at 772, with Boston Herald,
Inc. v. Sharpe, 432 Mass. 593, 605 (2000) ("There is a well-

an order of impoundment for good cause shown."  Pursuant to Rule 7(b), "[i]n determining good cause, the court shall consider all relevant factors, including, but not limited to, (i) the nature of the parties and the controversy, (ii) the type of information and the privacy interests involved, (iii) the extent of community interest, (iv) constitutional rights, and (v) the reason(s) for the request."  The good cause standard of Rule 7 requires a court to "balance the rights of the parties based on the particular facts of each case."  See Boston Herald, Inc. v. Sharpe, 432 Mass. 593, 604 (2000).  We conclude that the good cause standard of Rule 7, which ordinarily applies to motions for impoundment, is appropriate in evaluating requests by the parties or the Commonwealth for access to the impounded records of care and protection proceedings.  Because Rule 7 requires a Juvenile Court judge to balance the rights of the parties based upon the specific facts presented in each case, there is no need to adopt standards and protocols similar to those set forth in Dwyer, 448 Mass. 122.  See discussion, infra.

b.  Application of Rule 7 in care and protection context. We turn to the application of the good cause standard in Juvenile Court care and protection proceedings.  Under the good cause framework of Rule 7, specifically concerning "the type of

established common-law right of access to the judicial records of civil proceedings").

information and the privacy interests involved," the analysis begins with the recognition that records held in care and protection case files, which have not been introduced in evidence at a trial on termination of parental rights, have heightened privacy interests and should not be disclosed absent compelling circumstances. "[T]he legitimate expectations of privacy, possessed by most litigants in domestic relations proceedings, would ordinarily constitute 'good cause' to justify impoundment of discovery materials which are confidential in nature." George W. Prescott Publ. Co. v. Register of Probate for Norfolk County, 395 Mass. 274, 278 (1985) (concluding that good cause to impound deposition of public official where testimony included allegations of misconduct in office requires showing of overriding necessity). See, e.g., Care & Protection of Erin, 443 Mass. 567, 570 (2005).

The purposes of a care and protection proceeding, and the evidence introduced in such proceedings, are entirely different from the concerns of a criminal trial. An individual filing a care and protection petition must allege "under oath" that a child "(a) is without necessary and proper physical or educational care and discipline; (b) is growing up under conditions or circumstances damaging to the child's sound character development; (c) lacks proper attention of the parent, guardian with care and custody or custodian; or (d) has a

parent, guardian or custodian who is unwilling, incompetent or unavailable to provide any such care, discipline or attention." Care & Protection of Lillian, 445 Mass. 333, 337 (2005), quoting G. L. c. 119, § 24.  Investigation of these types of assertions necessarily involves the most intimate details of the parents' and the child's lives, and reports undertaken by the department may well include much that is hearsay, not relevant to the events at issue in a criminal case, and specifically intended to attack a parent's character.  See Gilmore v. Gilmore, 369 Mass. 598, 604-606 (1976).  See, e.g., Care & Protection of Frank, 409 Mass. 492, 494-495 (1991) ("Where a person's character is itself in issue, as a parent's character generally is in custody or adoption cases, courts have usually held that it may be proved by evidence of specific acts of misconduct bearing on character").  Such proceedings also may include evidence of misconduct entirely unrelated to the particular events that led to the criminal charges.  See id. at 494 (evidence of possession of marijuana and operating motor vehicle while under influence of alcohol relevant to parent's character and fitness).  While important in determining parental fitness, such considerations of character have no place in a criminal trial.

Similarly, investigative reports, such as the GAL report, that are written to provide the court with a comprehensive overview of all of the family circumstances, almost inevitably

contain unsupported assertions by third parties.  As a result, the judge may only rely on GAL reports when the parent has the opportunity to contest the information contained in the report. Adoption of Mary, 414 Mass. 705, 710 (1993) ("Due process concerns and fundamental fairness require that a parent have an opportunity effectively to rebut adverse allegations [contained in a GAL report] concerning child-rearing capabilities, especially in a proceeding that can terminate all legal parental rights").  See Gilmore v. Gilmore, 369 Mass. 598, 604-605 (1976) (where judge relied on GAL report, error for judge to prevent GAL from testifying, because "the parties should have the opportunity to rebut the report, including the right to cross-examine the investigator").  Such concerns, and the lack of relevance of these types of materials in a criminal proceeding, should guide judges in weighing whether good cause exists for the release of such materials.

In addition, in an effort to retain custody or a relationship with a child, parents themselves may feel compelled to introduce much of the same type of material.  Indeed, as the department is permitted to draw an adverse inference from a parent's decision not to testify, Custody of Two Minors, 396 Mass. 610, 616 (1986), the parties do not dispute that, without parental testimony at a care and protection proceeding, a parent's chance of retaining custody of a child is, as a

practical matter, greatly diminished. "The liberty interest . . . of parents in the care, custody, and control of their children . . . is perhaps the oldest of the fundamental liberty interests recognized by [the United States Supreme] Court." Troxel v. Granville, 530 U.S. 57, 65 (2000). There is "no doubt that '[t]he rights to conceive and to raise one's children' are 'essential . . . basic civil rights . . . far more precious . . . than property rights.'" Department of Pub. Welfare v. J.K.B., 379 Mass. 1, 3 (1979), quoting Stanley v. Illinois, 405 U.S. 645, 651 (1972). "[F]undamental fairness, as well as due process concerns, requires that a parent be given the opportunity effectively to rebut adverse allegations concerning his or her child rearing capabilities" (citation omitted). Brantley v. Hampden Div. of the Probate & Family Ct. Dept., 457 Mass. 172, 185 (2010).

While the "crucial fact [remains] that the focus of the [care and protection] proceeding should be on the best interests of the child," "the balance to be struck [with parental rights is] complex" (citation omitted). J.K.B., 379 Mass. at 5. Care and protection proceedings strike that balance, in part, through certain procedural protections, such as a right to counsel. See G. L. c. 119, § 29. "Custody proceedings are not criminal in nature[, however,] and, accordingly, the full panoply of constitutional rights afforded criminal defendants does not

apply in these cases." Custody of Two Minors, 396 Mass. at 616. Care and protection proceedings, where a parent's procedural rights do not receive the full protection of criminal adjudications, are not designed to be discovery mechanisms for criminal proceedings.

In this case, the judge properly drew a distinction between records that were admitted at the trial on the termination of parental rights and those records that were provided to, and used by, the Juvenile Court for other purposes, such as the GAL report. The decision not to disclose the GAL report was appropriate, in part, because "[GAL] reports may properly contain hearsay information." Adoption of Georgia, 433 Mass. 62, 68 (2000). See Gilmore, 369 Mass. at 604-606 (where judge relies on GAL report, GAL must testify in order to determine "reliability and accuracy of a report" that is based on interviews with other individuals). Where it was likely that the reports contained information that not only was irrelevant to the criminal proceedings, but also would not be admissible as evidence, the trial judge properly withheld their disclosure.

Although many of the documents filed in a care and protection proceeding focus on things not likely to be relevant to a criminal trial, where the records were admitted at the termination of parental rights trial, the parties had at least

some opportunity to contest their admissibility.[5] In addition, by introducing some records in evidence and relying on them at the care and protection trial, the mother relinquished some of her privacy interests in those documents. Although a decision to introduce documents, such as her medical records, is fraught with some of the same considerations involving a parent's decision whether to testify, see part 2.d, infra, the mother may not have the same right to privacy in records she chose to introduce at trial. This is particularly so where one of the parties seeking access to the records was also a party to the care and protection hearing.[6] We emphasize, however, that a decision to introduce records at trial, in an effort to retain custody of a child, is not itself dispositive and, in deciding whether records should be released, a trial judge must carefully weigh all of the good cause factors under Rule 11.

c. Mother's arguments on Dwyer protocol. The mother argues that the good cause standard is not sufficiently

---

[5] At the hearing on the motion, the Commonwealth specified that its request for "relevant" materials meant that it sought "the entire file" in the care and protection case. The judge allowed the Commonwealth and the father to access "only trial records, not other files, including [GAL] reports not marked and admitted during the trial."

[6] The decision not to introduce records in evidence does not necessarily shield them from disclosure, as the judge should consider all of the good cause factors when making a determination.

protective, and that the procedures used in Dwyer proceedings should apply in requests for release of records in care and protection proceedings. She argues, in particular, that good cause is not a sufficiently strict standard under which to evaluate requests for release of her trial testimony concerning her conversations with her psychotherapist, her therapist's testimony, and the medical records of her psychotherapist that were introduced at the trial on termination of parental rights. In addition, the mother argues that allowing access to what parents properly believed would be private communications with psychotherapists could lead to critical information being unavailable at a care and protection proceeding, as parents would choose not to introduce communications with their psychotherapists if they fear doing so would result in those communications becoming discoverable in a criminal proceeding.[7]

---

[7] The mother observes that under a Federal statute, 42 U.S.C. § 5106a(b)(2), there may be another reason that the motions for release from impoundment should be denied. That statute provides:

> "A State plan submitted under paragraph (1) shall contain a description of the activities that the State will carry out using amounts received under the grant to achieve the objectives of this subchapter, including . . . an assurance in the form of a certification by the Governor of the State that the State has in effect and is enforcing a State law, or has in effect and is operating a statewide program, relating to child abuse and neglect that includes . . . methods to preserve the confidentiality of all

We note, first, that <u>Dwyer</u> addresses access to third-party records protected by statute or privilege that are not in the court's possession.  Pursuant to Juvenile Court Standing Order 1-84, however, records introduced in evidence at a care and protection trial are the property of the Juvenile Court.  See <u>Care & Protection of Sharlene</u>, 445 Mass. at 772 ("Standing Order 1-84 . . . unambiguously makes all Juvenile Court case records the property of the court . . .").  Accordingly, the test for third-party records under <u>Dwyer</u>, 448 Mass. at 140-141, 145-147, is not an appropriate test for determining discoverability of these medical records or other third-party records introduced at trial.

---

records in order to protect the rights of the child and of the child's parents or guardians . . . ."

The statute, however, contains an exception to that requirement of confidentiality:  "records made . . . shall only be made available to . . . Federal, State, or local government entities, or any agent of such entities, as described in clause (ix)."  42 U.S.C. § 5106a(b)(2)(viii)(II).  Clause (ix) requires the State plan to include "provisions to require a State to disclose confidential information to any Federal, State, or local government entity, or any agent of such entity, that has a need for such information in order to carry out its responsibilities under law to protect children from child abuse and neglect."  42 U.S.C. § 5106a(b)(2)(ix).

As the Commonwealth seeks the records from the Juvenile Court for the purposes of prosecuting alleged child abuse, the disclosure is within the exception of clause (ix).  See 42 U.S.C. § 5106a(b)(2)(ix).

The privacy interests that underlie Dwyer, and that motivate the mother's arguments, are adequately protected by the good cause standard that we adopt today.  In this case, confidential access by the parties and the Commonwealth, where the Commonwealth affirms that it is already aware, through the department, of the substance of numerous departmental records, would not result in release of the mother's therapeutic conversations to the public.  Relatedly, in this case, the father was present throughout the care and protection trial, heard the mother's testimony, and viewed many of the records entered in evidence.  Therefore, here, the mother has a diminished privacy interest in the records of that proceeding, with respect to the parties seeking the records.

We emphasize that the good cause standard we adopt today is applicable only to the parties to a care and protection proceeding and the Commonwealth; as does Dwyer, our decision seeks to safeguard against public disclosure of private materials.  See Dwyer 448 Mass. at 148-149 (Appendix).  A judge considering release of Juvenile Court records in care and protection proceedings may require that records released to parties and the Commonwealth be kept confidential and may order the parties to take steps to safeguard them against public disclosure.

We emphasize as well that a decision to allow the parties limited access to records of care and protection trials, if a judge of the Juvenile Court finds good cause to do so, is not a decision that the records are admissible at a criminal trial. A determination as to any further use will require an additional weighing, with many additional factors to consider, and opportunities to be heard, by the trial judge in the criminal proceeding. The mother's testimony, however, as discussed, is subject to further, constitutional limitations.

In sum, applying the good cause standard of Rule 7 to the records of a care and protection trial is consistent with the instruction in Rule 11 that the standard for release from impoundment should follow "procedures set forth [elsewhere] in the[] rules" where practicable. Under this standard, a Juvenile Court judge should consider, among other things, "the reason(s) for the request," as stated in Rule 7. This would suggest that disclosure would be precluded if a request for access were based on irrelevant considerations, sought documents that were not material to the asserted purpose, were a vague and general fishing expedition, or were redundant. Here, for example, the Commonwealth sought the entire case file on the ground that its contents "most likely provided significant information." A party's choice to disclose records by admitting them in evidence at a care and protection proceeding, on the other hand, could be

a significant factor to consider in deciding whether good cause exists, subject to the constitutional limitations discussed below.

d. Burden of proof. Because of the presumption of public access to records, a party seeking to impound a record under Rule 7 has the burden to demonstrate good cause for impoundment. Globe Newspaper Co., petitioner, 461 Mass. 113, 120-121 (2011). In care and protection proceedings, however, the statute requires that the record be impounded to protect the privacy interests of the parties. Accordingly, it follows that a party or the Commonwealth seeking to pierce this veil of privacy should bear the burden of demonstrating good cause for release from impoundment. We reject the Commonwealth's contention that, rather than the proponent of the motion for release bearing the burden of establishing good cause for such release, the individual opposing release should bear the burden of showing why the statutorily impounded record should remain impounded. To impose the burden on the party opposing the release would be contrary to the Legislature's reasons for requiring Juvenile Court proceedings to be closed and Juvenile Court records to be impounded. Moreover, it is inconsistent with our usual approach of requiring the proponent of a motion to bear the burden of establishing that it should be granted.

e. Waiver of privilege. We turn to the question of waiver. In her reservation and report, the single justice asked whether a waiver of the privilege against self-incrimination in a care and protection proceeding, and a waiver of the patient-psychotherapist privilege, is limited in scope to that proceeding.

i. Privilege against self-incrimination. We address first whether the mother's testimony in the care and protection proceeding extinguished her right to decline to testify in the subsequent criminal trials. The mother argues that her waiver of her rights under the Fifth Amendment to the United States Constitution was limited to the context of the care and protection trial. The Commonwealth argues, by contrast, that the mother may not "retroactively" claim a privilege not to testify where not only did she decide to testify in the closed Juvenile Court proceeding, but both she and her attorney were aware of the criminal proceeding pending against her, and, as the judge found, her attorney reasonably should have been aware of the potential future request for the trial record before the mother testified. The Commonwealth further argues that the mother's statements at the hearing are admissible in the future criminal trial as both an admission by a party opponent and as prior recorded testimony of an unavailable witness if she chooses to invoke her privilege.

Under the waiver by testimony rule, a testifying witness waives the privilege against self-incrimination only for the same proceeding. "The waiver, once made, waives the privilege only with respect to the same proceeding; the witness may once again invoke the privilege in any subsequent proceeding." Commonwealth v. King, 436 Mass. 252, 258 n.6 (2002). See Commonwealth v. Martin, 423 Mass. 496, 501 (1996), citing Commonwealth v. Borans, 388 Mass. 453, 457-458 (1983) ("testimony before a grand jury should not be considered a waiver of a witness's privilege against self-incrimination for the purpose of offering testimony at a subsequent trial on an indictment returned by that grand jury"); Taylor v. Commonwealth, 369 Mass. 183, 190-191 (1975); Commonwealth v. Fiore, 53 Mass. App. Ct. 785, 786, 789-790 (2002) (witness's deposition testimony in criminal defendant's civil action against insurance company was not waiver of witness's privilege against self-incrimination at defendant's arson trial because events were "clearly separate proceedings"). Contrast King, 436 Mass. at 258 n.6 (if victim's testimony at voir dire evidentiary hearing on defendant's motion to exclude victim's statements to police were voluntary and waived privilege against self-incrimination, witness could not later invoke privilege at criminal trial because hearing and trial are same proceeding); Commonwealth v. Judge, 420 Mass. 433, 445 n.8 (1995) (same for

pretrial hearing on motion to suppress); Luna v. Superior Court, 407 Mass. 747, 750-751 (1990) (same for pretrial hearing on motion to dismiss).

A care and protection trial focuses on the child's best interests and whether the parents should retain custody of the child, while a criminal trial is concerned with whether an individual committed a crime; the two are entirely different proceedings. As discussed, to retain custody of a child, a parent has little choice but to testify at the care and protection proceeding. See Custody of Two Minors, 396 Mass. at 617.

Due to the separate concerns of a trial on the termination of parental rights and a criminal trial, we conclude that the waiver of the privilege against self-incrimination at a trial on the termination of parental rights does not result in a waiver of that privilege in a subsequent criminal trial. In any future criminal proceeding, with entirely different stakes and rights at issue, the mother may reassert the privilege against self-incrimination.

ii. Admission of prior testimony. Fifth Amendment jurisprudence consistently has treated testimony at an earlier proceeding as being inadmissible at a separate, subsequent proceeding. In Simmons v. United States, 390 U.S. 377 (1968), the United States Supreme Court held that a defendant's

statements from a hearing on the suppression of evidence could not be admitted at the defendant's criminal trial for the purpose of determining guilt or innocence. Id. at 382, 389-390, 394. By holding that the statements were inadmissible, the Court eliminated the "Hobson's choice" that the defendant otherwise would have faced: whether to forgo a potentially valid claim under the Fourth Amendment to the United States Constitution or effectively to surrender the Fifth Amendment right to avoid self-incrimination. Id. at 391, 394. Similarly, in Bridgeman v. District Attorney for the Suffolk Dist., 471 Mass. 465, 493 (2015), S.C., 476 Mass. 298 (2017), this court relied on Simmons to hold that a defendant's testimony at a hearing on a motion to withdraw a guilty plea following government misconduct was inadmissible at any future criminal trial.

"Th[e] interest of parents in their relationship with their children is a fundamental right and is constitutionally protected." Custody of Two Minors, 396 Mass. at 617. If the mother's testimony from the care and protection trial were admissible at a future criminal trial, the mother would confront an intolerable Hobson's choice: testify in the hope of retaining her right to care for her child and sacrifice her Fifth Amendment right against self-incrimination, or choose her right not to incriminate herself over any possibility of

retaining custody of her child.[8]  See <u>Santosky</u> v. <u>Kramer</u>, 455 U.S. 745, 759 (1982).  This choice would be particularly poignant because the Juvenile Court is permitted to draw adverse inferences from a parent's refusal to testify.  See <u>Custody of Two Minors</u>, <u>supra</u> at 616.  In light of <u>Simmons</u> and its progeny, we conclude that the mother's testimony from the care and protection proceeding ordinarily is not admissible at a future criminal proceeding.[9]

iii.  <u>Psychotherapist privilege.</u>  Lastly, we turn to the question whether the mother's introduction of psychiatric evidence at the care and protection trial served as a waiver of her right to assert the patient-psychotherapist privilege at a subsequent criminal trial.  The mother argues that her testimony regarding conversations with her psychotherapist should not be admissible at a future criminal proceeding because her waiver of psychotherapist privilege was specific to the care and protection trial.  The Commonwealth does not agree that the waiver was limited to that trial.

---

[8] <u>Adoption of Don</u>, 435 Mass. 158, 168 (2001), citing <u>Little</u> v. <u>Streater</u>, 452 U.S. 1, 13 (1981).

[9] Should the mother choose to testify at her criminal trial, however, and should her testimony differ significantly from her testimony at the care and protection proceeding, her prior testimony at the care and protection proceeding would be admissible as impeachment evidence.  See <u>Commonwealth</u> v. <u>Rivera</u>, 425 Mass. 633, 637-638 (1997).

The patient-psychotherapist privilege is set forth in G. L. c. 233, § 20B. The statute provides, in relevant part:

> "[I]n any court proceeding . . . a patient shall have the privilege of refusing to disclose, and of preventing a witness from disclosing, any communication, wherever made, between said patient and a psychotherapist relative to the diagnosis or treatment of the patient's mental or emotional condition."

See Mass. G. Evid. § 503 (2017). This privilege is case-specific; the language of G. L. c. 233, § 20B, explicitly contemplates that the privilege exists for a particular proceeding. At this time, then, the mother retains her psychotherapist privilege for any future criminal trial. The psychotherapist evidence is not admissible at the mother's trial unless she puts her mental health at issue in her defense. If she indicates at that point that she intends to do so, admissibility at the criminal trial is a matter to be decided by the Superior Court judge, who is required to determine whether a defendant "'introduce[d] his [or her] mental or emotional condition as an element of his [or her] . . . defense,' G. L. c. 233, § 20B (c), such that he [or she] waived the privilege." Commonwealth v. Dung Van Tran, 463 Mass. 8, 19 (2012). If the mother, as a defendant in a criminal proceeding, chooses not to present a defense that includes mental health as an element, then the psychotherapist testimony will not be admissible. See id. Because it is uncertain whether the mother will place her

mental or emotion condition at issue in a future criminal trial, at this stage the question of the mother's waiver of the psychotherapist privilege is premature.

f. Application of good cause test. The judge made his determination in a proceeding where there was no prior precedent; he was guided only by a single decision of a single justice in the Appeals Court, upon which he relied extensively. In his decision, the judge correctly assigned the burden of proof to the moving parties, and required all of the parties to protect privacy interests by keeping the records confidential. In relying on the single justice's decision, the judge stated that he found good cause for release for "trial preparation" only.

Nonetheless, while many aspects of the decision are appropriate, as the parties acknowledge in their briefs, the judge does not appear to have applied the good cause analysis as set forth in Rule 7. Among other things, he appears to have based his reasoning on the purpose of the care and protection proceeding rather than on the competing factors under Rule 7. More generally, he appears to have considered issues of "convenience" for the parties, who state that they have other means of accessing many of the requested documents, or already have done so, rather than under the good cause rubric. We

remand this case to the Juvenile Court to apply the good cause test in the first instance.

3.  <u>Conclusion</u>.  The matter is remanded to the county court for entry of an order vacating and setting aside the decision of the Juvenile Court judge and remanding the matter to the Juvenile Court for further proceedings consistent with this opinion.

<u>So ordered</u>.