## CARE AND PROTECTION OF FRANK.

Middlesex. January 8, 1991. - March 7, 1991.

Present: LIACOS, C.J., NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Minor*, Care and protection. *Parent and Child*, Care and protection of minor. *Evidence*, Criminal records, Prior misconduct, Child custody proceeding.

In a proceeding to determine the need for care and protection of a minor, the judge properly considered the mother's convictions of operating while under the influence of intoxicating liquor and possession of marihuana, as well as evidence of three incidents of the mother's criminal conduct that did not lead to convictions, to the extent these matters were relevant to the issue of the mother's fitness as a parent. [494-498]

In a proceeding to determine the need for care and protection of a minor, there was no indication that the judge improperly relied on information not in evidence, that was, in any event, not shown to be prejudicial to the parent. [498-499]

PETITION filed in the Concord Division of the District Court Department on August 17, 1988.

The case was heard by *Frederick V. Gilgun*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Sharon Feigenbaum* for the mother.

*David Hofstetter*, Assistant Attorney General, for Department of Social Services.

LYNCH, J. The mother of a minor child, Frank (pseudonym), appeals a judgment of the District Court finding her son to be in need of care and protection pursuant to G. L. c. 119, § 24 (1988 ed.).[1] The mother argues that the trial judge improperly admitted evidence of her criminal convic-

---

[1]The District Court also found the mother's daughter to be in need of care and protection. The mother does not appeal that finding.

tions, arrests, and behavior. She also challenges the admission of drugs and drug paraphernalia allegedly suppressed in a criminal proceeding as the fruits of an unconstitutional search. We transferred the case to this court on our own motion. We affirm.

The mother, thirty-five years old at the time of trial, suffers from manic-depressive illness, drug abuse, and alcoholism. She has been hospitalized a number of times for her manic-depressive condition and for abuse of cocaine and marihuana. The judge found that the mother's attendance at alcohol counselling has been "episodic at best."

The Department of Social Services (DSS) first examined the mother's behavior in March of 1988 in response to a report alleging that she had emotionally and physically abused Frank, then six years old. See G. L. c. 119, § 51A (1988 ed.). On August 17, 1988, DSS filed a care and protection petition pursuant to G. L. c. 119, § 24, concerning Frank and the mother's minor daughter.[2] Trial on the petition began on May 11, 1989.

The trial judge found that Frank's behavior and academic performance deteriorated steadily during the 1987-1988 and 1988-1989 school years, while his mother continued to receive treatment for her manic-depressive condition and for substance abuse. (Frank repeated the first grade in the 1988-1989 school year.) In addition, Frank was frequently unkempt and his clothes were dirty or inappropriate. For example, on one January day with the temperature in the mid-teens, he came to school without a jacket. The court also noted that Frank was distracted and easily upset during this period, bursting into tears when asked what was wrong.

With respect to the mother, the trial judge summarized his findings as follows: "[The mother] has not taken her prescribed lithium [to control her manic-depressive illness] as directed. She has not been active in Alcoholics Anonymous. She has not provided an environment free of illicit drugs or

---

[2]Whether the same man fathered both Frank and the mother's minor daughter has not been legally determined.

unstable male-female relationships and she has failed to maintain service plans, school visitation schedules and counselling programs as directed." The judge therefore ruled that Frank was in need of care and protection.[3]

The mother argues that the court erred in admitting evidence of her criminal arrests, convictions, and behavior, and improperly relied on that evidence in its holding. These arguments are not persuasive.

1. *Evidence of prior convictions.* The mother contends that the judge erred in admitting evidence of her prior convictions of operating under the influence, and possession of marihuana. We disagree.

The mother suggests, initially, that these convictions are irrelevant to the issue of her fitness as a parent as contemplated by G. L. c. 119, § 24. That provision describes, inter alia, parents who are "unwilling, incompetent or unavailable" to provide proper care for children in their custody. *Id.* Evidence of alcohol or drug abuse clearly is relevant to a parent's willingness, competence, and availability to provide care, though not necessarily dispositive of the issue. The convictions offered in this case (for operating under the influence, and possession of marihuana) bear on the relevant factors of alcohol and drug abuse. Therefore, we reject the argument that these convictions are irrelevant to the issue of the mother's fitness as a parent.

Further, in a case such as this there is no reason why evidence of a parent's criminal record, to the extent it bears on parental fitness, should be excluded categorically in care and protection proceedings, as the mother urges. *Adoption of Irwin*, 28 Mass. App. Ct. 41, 42-43 (1989). "Where a person's character is itself in issue, as a parent's character generally is in custody or adoption cases, courts have usually held that it may be proved by evidence of specific acts of misconduct bearing on character. McCormick, Evidence § 187 (2d ed. 1972)." *Id.* at 43. See also *Commonwealth* v. *Tobin*, 392 Mass. 604, 613 (1984) (evidence of wrongful behavior inad-

---

[3]See note 1, *supra.*

missible to prove character or criminal propensity of defend-
ant may nevertheless be admitted for other relevant pur-
poses). Of course, evidence of prior criminal convictions will
not be conclusive of parental unfitness in every case. To the
extent it bears on fitness, however, evidence of prior convic-
tions may properly be weighed in the balance.

The mother also argues that admission of the prior convic-
tion of marihuana possession was improper under G. L.
c. 233, § 21 (1988 ed.). However, "Section 21 is merely a
statutory exception to the common-law rule that specific acts
of prior misconduct are not admissible to impeach the credi-
bility of a witness. See *Commonwealth* v. *Binkiewicz*, 342
Mass. 740, 755 (1961); *Commonwealth* v. *Turner*, 371 Mass.
803, 809-810 (1977); Liacos, Massachusetts Evidence 149-
151 (5th ed. 1981). Section 21 has no application where
prior criminal convictions are relevant to and offered for
some other purpose. *Commonwealth* v. *Redmond*, 357 Mass.
333, 337 (1970); *Commonwealth* v. *Killelea*, 370 Mass. 638,
650 (1976)." *Adoption of Irwin, supra* at 42-43.[4]

There was no error in the admission of the prior
convictions.

2. *Evidence of criminal conduct.* The mother argues that
the judge improperly admitted evidence of her criminal con-
duct that did not lead to conviction. She objects to the ad-
mission of evidence concerning three incidents.

First, the mother objects to the admission of testimony by
a police officer concerning an incident on July 15, 1988. The
officer testified that, on that date, he observed the mother
staggering down the street, and, believing she was drunk,
placed her in protective custody. According to the officer's
testimony, the police searched the mother and discovered
marihuana and a powdery substance they believed to be co-
caine. The mother was later convicted of possession of mari-
huana, but, the officer stated, a charge for possession of co-

---

[4]Thus cases cited by the mother regarding the use of evidence admitted
under § 21 for substantive rather than impeachment purposes are inappo-
site here. See, e.g., *Commonwealth* v. *Denson*, 16 Mass. App. Ct. 678,
683-684 (1983).

caine was dismissed when laboratory tests revealed that the powder was not cocaine.

The mother argues that, because she was convicted only of possession of marihuana, the judge should have excluded the officer's other statements regarding her behavior. We disagree. The bulk of the disputed testimony related the officer's personal observations of the mother's conduct, and thus was the most ordinary sort of testimony. A witness is no less entitled to relate his observations merely because he is a police officer or because the conduct he observed is criminal.

Furthermore, we reject the argument that the admission of testimony regarding the cocaine charge, because it did not result in conviction, was unfairly prejudicial to the mother. In light of the officer's candid admission that the charge was dropped when the powdery substance in the mother's possession proved not to be cocaine, we conclude that the evidence of the charge was neither prejudicial nor misleading. We also note that the judge did not rely on, or even mention, this cocaine charge in his decision.[5]

Second, the mother argues that the court erred in considering a police report regarding an incident on August 9, 1988, when police entered the mother's apartment in response to her telephone call for assistance after her boyfriend had beaten her.[6] The report states that the mother was bleeding from the mouth when the officers arrived at 11:30 P.M. It further states that the mother was heavily intoxicated, and that she yelled and cursed continuously. The report describes the apartment as "a complete mess," with cigarettes

---

[5]The judge's Findings of Fact and Conclusions of Law mention the entire incident only once, in the following sentence: "In the summer of 1988 [the] mother was convicted of possession of marijuana."

[6]Because tape recordings of this portion of the trial are missing, the transcript does not contain the testimony of the officer who filed the report and, in fact, does not indicate whether the officer testified at all. Neither party has attempted to clarify the record. Therefore, although the mother also argues that police testimony concerning this incident was improperly admitted, we address only the disputed police report filed in connection with the incident.

and beer cans strewn about. In addition, the reporting officer notes that Frank "in my opinion was able to sleep through [the incident] as he is use [*sic*] to this type of life style."

The mother objects to the admission of this report, her brief asserts, on the ground that it is "evidence of criminal conduct [used] in an attempt to prove [the mother's] unfitness." Even if the report contains evidence of the mother's criminal conduct, however, because it contains evidence of the officer's personal observations which are relevant to the issue of parental fitness, the admission of the report was not in error.

Finally, the mother objects to the admission of evidence connected with an incident that occurred on February 13, 1989. On that date, officers were dispatched to the mother's apartment in response to a telephone call reporting a child screaming. After hearing a female voice inside threaten the child, the officers forcibly entered the apartment. Two officers testified that the apartment was in disarray, with food and garbage scattered on the floor. The mother was, in the words of one officer, "very belligerent, using profanity," and smelled of alcohol. She acknowledged to the officers that she had been drinking. The mother explained that she had not actually threatened Frank, but had argued with him after she punished him by taking away a video game. One officer testified that the mother consented to a search of the apartment, which revealed (in plain view) a makeshift pipe made of aluminum foil, a pestle, two marihuana cigarette butts (or "roaches"), and "pills strewn all over the place." Subsequently, under chemical analysis, the pipe and "roaches" tested positive for marihuana, and the pestle tested positive for cocaine.

The mother objects to the admission of the drug analysis reports, drug paraphernalia, and officers' testimony and reports on the ground that this evidence was the fruit of unconstitutional police activity. The mother asserts that all this ev-

idence was suppressed in a prior criminal proceeding.[7] We conclude that the judge did not err in admitting the evidence.

In *Petition of the Dep't of Social Servs. to Dispense with Consent to Adoption*, 384 Mass. 707, 711 (1981), this court refused to extend the exclusionary rule to custody proceedings and refused to categorize such proceedings as criminal. Accord *Custody of Two Minors*, 396 Mass. 610, 616 (1986). Unquestionably, the removal of a child from a parent's custody is a substantial deprivation. See *id.* at 617-618; *Lassiter v. Department of Social Servs.*, 452 U.S. 18, 27 (1981). The overriding concern of the State as parens patriae, however, is the protection of endangered children. See *Petition of the Dep't of Social Servs. to Dispense with Consent to Adoption, supra*; *Custody of Two Minors, supra*. See also *Wyman v. James*, 400 U.S. 309, 318 (1971) ("The dependent child's needs are paramount, and only with hesitancy would we relegate those needs, in the scale of comparative values, to a position secondary to what the mother claims as her rights"). Given this focus, we see no reason to apply a different standard here from the standard in custody proceedings where we have held that the exclusionary rule does not apply. *Petition of the Dep't of Social Servs. to Dispense with Consent to Adoption, supra.*[8]

3. *Posttrial submissions.* After the close of the hearing, attorneys representing Frank mailed the trial judge a letter and copies of a docket sheet, appointment of counsel slip, and police report showing that on June 14, 1989, the mother was

---

[7] The mother offers no proof that the disputed evidence was in fact suppressed in the criminal proceeding. We assume the truth of her allegation for present purposes, however, because the prior suppression does not affect the outcome of this case.

[8] The mother further argues that, stripped of the improper evidence of her criminal convictions and activities, the judge's findings are inadequate to support the conclusion that she is unfit. See *Custody of a Minor (No. 2)*, 392 Mass. 719, 725 (1984). Our holding that the evidence of the mother's criminal conduct was properly admitted, however, cancels the premise of this argument. Therefore, we do not dissect the judge's findings. The mother does not argue that the judge's findings are insufficiently specific and detailed as written.

arrested and charged with disorderliness, disturbing the peace, and keeping a noisy and disorderly house. See G. L. c. 272, § 53 (1988 ed.). The mother moved for mistrial based on this submission of evidence, and the trial judge denied her motion. We affirm the judge's decision.

A judge may not properly consider or rely on information not in evidence in a case. *Care & Protection of Benjamin*, 403 Mass. 24, 27 (1988). In this instance, however, there is no indication that the judge ever read the posttrial submissions, much less relied on them. The judge's Findings of Fact and Conclusions of Law do not allude to this information in any way. Even assuming arguendo that the judge did consider this information, however, the mother has failed to demonstrate that she was prejudiced thereby. Contrast *id.* at 27-28 (finding prejudice where judge relied on improper evidence). Therefore, we conclude that the alleged impropriety was at most harmless error. See G. L. c. 231, § 119 (1988 ed.).

There was no reversible error in the decision of the District Court. The court's judgment is, therefore, affirmed.

*So ordered.*