The mother appeals from a decree issued by a judge of the Juvenile Court terminating her parental rights to her son, Yashir, placing him into the care of the Department of Children and Families (DCF), and approving a plan for his adoption.[3] On appeal, the mother contends that the judge's findings are insufficient to establish her unfitness by clear and convincing evidence. She also challenges several of the judge's findings of fact as clearly erroneous. We affirm.
Discussion. 1. Unfitness. The mother claims that the judge's findings are insufficient to establish her unfitness by clear and convincing evidence.[4]
"To terminate parental rights to a child and to dispense with parental consent to adoption, a judge must find by clear and convincing evidence, based on subsidiary findings proved by at least a fair preponderance of evidence, that the parent is unfit to care for the child and that termination is in the child's best interests." Adoption of Jacques, 82 Mass. App. Ct. 601, 606 (2012). "[T]he term 'unfitness' signifies something more than a standard by which we measure the limits of acceptable parental conduct ... [it is] a standard by which we measure the circumstances within the family as they affect the child's welfare." Petition of the Dept. of Pub. Welfare to Dispense with Consent to Adoption, 383 Mass. 573, 589 (1981). In determining whether the best interests of the child are served by a termination of parental rights, the judge "shall consider the ability, capacity, and readiness of the child's parents ... to assume parental responsibility." Adoption of Elena, 446 Mass. 24, 31 (2006), quoting from G. L. c. 210, § 3(c ).
Here, the judge made 132 specific and detailed findings of fact. The evidence showed that the mother suffers from serious mental health issues and has had numerous hospital stays for various episodes.[5] She has not consistently taken her prescribed medication, attended therapy appointments, doctors' appointments, or complied with the service plans that DCF put in place to help address her issues. In addition, the mother declined to participate in a court-ordered clinical evaluation to address her cognitive limitations. Evidence of a parent's failure to maintain and follow through on the requirements of service plans, to consistently participate in counselling programs, as well as the refusal of other assistance, is relevant to the determination of parental unfitness. See Adoption of Rhona, 63 Mass. App. Ct. 117, 126 (2005) ; Adoption of Leland, 65 Mass. App. Ct. 580, 585 (2006).
The mother has engaged in numerous violent altercations. The police reports-which were admitted for all purposes-reveal an alarming pattern of behavior, including multiple instances of assault and battery and multiple instances of assault and battery by means of a dangerous weapon. See Adoption of Paula, 420 Mass. 716, 727 (1995) ("Admission of the police report as a business record was proper"). One incident of assault and battery by means of a dangerous weapon occurred during the pendency of this action.[6]
Furthermore, the mother has an extensive history of domestic violence, both as the victim and the perpetrator. Four abuse prevention orders have been issued against her. At the time of trial she was dating a man who had a lengthy criminal record and history of domestic violence.[7] It is well established that exposure to domestic violence works a "distinctly grievous kind of harm" on children, Custody of Vaughn, 422 Mass. 590, 595 (1996), and instances of such familial violence are compelling evidence for a finding of parental unfitness. See id. at 595-596 ; Adoption of Gillian, 63 Mass. App. Ct. 398, 404-405 (2005).
The mother struggles with her use of alcohol and marijuana. She admits that she self-medicates with marijuana while at the same time forgoing prescription drugs intended to alleviate her mental health issues. See infra. Further, it is particularly noteworthy that she refuses to acknowledge this issue or the fact that it puts Yashir at risk. She admitted to regular use of marijuana and alcohol and has tested positive for cocaine on one occasion. The judge could properly find that the mother's substitution of alcohol and drugs for her mental health treatment was a form of substance abuse. "Evidence of alcohol or drug abuse clearly is relevant to a parent's willingness, competence, and ability to provide care ...." Care & Protection of Frank, 409 Mass. 492, 494 (1991).
Yashir was born prematurely and had significant medical complications as a result. Doctors referred him to early intervention programs immediately following his birth. The mother-who was not taking her medication at the time-did not place Yashir in any of the programs until he was fifteen months old, and even then did so sparingly. Yashir has developmental delays and has shown impulsive and aggressive behavior. The mother's mental issues are "relevant ... to the extent that it affects [her] ... ability to deal with [Yashir's] special needs." Adoption of Frederick, 405 Mass. 1, 9 (1989).
Yashir has been living with his foster parents since his removal from the mother's custody in 2014, when he was eighteen months old. The judge found that he has developed a bond with his foster parents and refers to them as "mommy" and "daddy." Considering Yashir's age, the amount of time he has spent in foster care, and that he has bonded with his foster parents, it was appropriate for the judge to conclude that a stable and loving home was in his best interests. See Adoption of Nancy, 443 Mass. 512, 517 (2005).
The judge's determination that the mother is unfit relied on facts which, taken together, provide clear and convincing evidence that the mother is currently unfit to parent Yashir, that she will likely remain so in the future, and that termination of her parental rights is in Yashir's best interests. See Custody of a Minor (No. 1), 377 Mass. 876, 883 (1979). We discern no error or abuse of discretion.
2. Findings of fact. The mother contends that several of the judge's factual findings were unsupported and that the evidence of unfitness was insufficient. We have determined that the findings were supported for the reasons stated below.
On review of a judge's decision to terminate parental rights, we give substantial deference to the trial judge's decision, and "reverse only where the findings of fact are clearly erroneous or where there is a clear error of law or abuse of discretion." Adoption of Ilona, 459 Mass. 53, 59 (2011). "A finding is clearly erroneous when there is no evidence to support it, or when, 'although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' " Custody of Eleanor, 414 Mass. 795, 799 (1993), quoting from Building Inspector of Lancaster v. Sanderson, 372 Mass. 157, 160 (1977).
The mother challenges the judge's findings regarding her diagnosis of bipolar disorder. She concedes that she has failed to consistently take her medication, but suggests that there is no correlation between taking her medication and the ability to parent Yashir.
The judge's findings regarding the mother's failure to meaningfully treat her mental health issues, and the effect they have on Yashir, are fully supported by the evidence. For example, the mother is diagnosed with bipolar disorder, mood disorder, and an epilepsy /seizure disorder which affects her memory.[8] She has been prescribed medication and therapy to cope with her impairments. The incident that triggered Yashir's removal occurred in 2014, when the mother was arrested for shoplifting. During the arrest she stripped off her clothes and threatened to commit suicide. At her medical evaluation she tested positive for cocaine and marijuana. The mother had not been taking her medication for eighteen months.
Although the mother has at times attended therapy, since the 2014 arrest she has not completed any of the mental health programs on her service plan despite the continuous efforts of DCF to help her comply. During this time, as indicated in the police reports, the mother's violent behavior has continued and restraining orders have issued against her. The evidence supports the judge's finding that the mother's mental health issues-including her inability to consistently take her medication-directly affect Yashir's well-being.[9]
The mother challenges the judge's finding that she "continues to have aggressive outbursts and escalates quickly when she does not get what she wants." She contends that there is nothing in the findings that suggests she was ever aggressive in a violent way. To the contrary, during the pendency of this action the mother was involved in a fight at the anger management program to which she was referred, which resulted in her expulsion from the program. Four restraining orders have been issued against her. Moreover, the social worker testified that her "explosive" behavior[10] has an impact on the mother's ability to parent Yashir and that there was concern that he would be the target of the mother's anger if he were returned to her custody.[11] Her aggressiveness was not limited to verbal altercations as the mother suggests. Regardless, the mother's verbally aggressive behavior, and the ongoing conflict in her relationships with others, even without evidence of violence, could be properly considered. See Adoption of Mary, 414 Mass. 705, 711 (1993). There was no error.
The mother asserts that the judge erroneously failed to credit her testimony that she did not have a substance abuse problem.[12] During the arrest that predicated the removal of Yashir, the mother tested positive for cocaine and marijuana.[13] Furthermore, the evidence shows that there is an ongoing concern with the mother's use of various other substances.[14] Medical providers-including the Department of Mental Health and the mother's neurologist-reported that the mother has a history of substance abuse. The mother continues to drink alcohol and smoke marijuana and does not acknowledge that her drug use puts Yashir at risk. She claimed to have a medical marijuana card, testimony which the judge specifically discredited. The judge was permitted to draw an adverse inference from the false testimony, and to find that the substitution of alcohol and marijuana for the prescription medication intended to address her serious mental health condition constituted substance abuse. The judge's finding was not clearly erroneous.
Finally, the mother challenges the judge's finding that she did not use her time visiting Yashir appropriately. During one visit the mother engaged in a verbal argument with her cousin[15] because Yashir was referring to the cousin as "mom" instead of "auntie." The mother did not attend subsequent visits with Yashir at her cousin's house. Moreover, the mother has been unable to consistently attend supervised visits with Yashir,[16] and when she does visit, Yashir is often defiant, impulsive, and aggressive in the aftermath. These behaviors diminish the longer he goes without seeing the mother. The finding that the mother "was not using her time at visits with [Yashir] appropriately" was rooted in the evidence.
Decree affirmed.

The Juvenile Court judge also terminated the father's rights, but he is not involved in this appeal.

We address the mother's challenge to specific findings, infra. We conclude that the judge's findings were fully supported, and incorporate those findings here.

The mother reported that she has had approximately ten psychiatric hospitalizations.

According to the mother, during the most recent arrest for assault and battery by means of a dangerous weapon, she and others hit the victim with a crowbar, punched him, and stabbed him with a large kitchen knife. She was then seen chasing the victim down the street with a butcher knife.

The mother testified that she hoped her current boy friend would remain a part of her life in the future.

The mother's neurologist reported that the mother's memory is affected by her seizures, but also stated that her memory issues could be due to her cognitive impairment. The mother declined a neurological examination, and so the extent of her cognitive impairment is unknown.

The mother also claims that she "demonstrated that she could adequately parent her son without medication when she did so for his first seventeen months." The mother fails to recognize that Yashir-who was born prematurely and has developmental delays as a result-did not begin receiving early intervention care until he was fifteen months old, even though his doctors referred him to early intervention immediately after his birth. It is not clear whether this oversight was caused by the mother's failure to adhere to her prescribed medications, but there was no basis in the evidence for the assertion that she was "adequately" caring for him in his early months.

The social worker testified that the mother would yell at social workers during home visits, kick them out of her home, and come to their office unannounced and demand to be seen without an appointment.

The mother also reported that she physically abused Yashir, but later recanted that statement.

The judge was not required to credit the mother's testimony, and we defer to "the judge's assessment of the weight of the evidence and the credibility of the witnesses." Adoption of Quentin, 424 Mass. 882, 886 (1997).

The mother did not feel she needed substance abuse treatment and did not think her one-time use of cocaine was a "big deal."

The mother admitted in 2008 to daily use of alcohol and marijuana.

Her cousin is Yashir's preadoptive mother, who also had temporary custody of him during the proceedings.

The judge found that the mother has missed approximately one-half of her visits with Yashir over the last year.