Following a trial in the Juvenile Court, the judge found the father unfit to care for his three children, and concluded that termination of his parental rights was in the children's best interests. See G. L. c. 119, § 26 ; G. L. c. 210, § 3. On appeal, the father contends that the judge erred by (1) using improper criteria to determine his parental fitness; (2) finding that the Department of Children and Families' (department) reunification services were adequate; and (3) improperly denying the father posttermination visits. We affirm.
Discussion. 1. Parental fitness. We review the decision of the judge to determine whether there was any abuse of discretion or error of law. See Adoption of Hugo, 428 Mass. 219, 225 (1998), cert. denied sub nom. Hugo P. v. George P., 526 U.S. 1034 (1999). We grant substantial deference to the judge's decision because a "judge who hears the evidence, observes the parties, and is most familiar with the circumstances remains in the best position to make the judgment [regarding fitness]." Guardianship of Estelle, 70 Mass. App. Ct. 575, 579 (2007). Consequently, we will uphold the judge's findings of facts unless they are "clearly erroneous." Adoption of Jacques, 82 Mass. App. Ct. 601, 606-607 (2012).
Parents have fundamental, constitutionally protected interests in their relationship with their children. See Petition of the Dep't of Pub. Welfare to Dispense with Consent to Adoption, 383 Mass. 573, 587 (1981). Accordingly, the State may only terminate parental rights if a "parent is currently unfit to care for the child." Adoption of Rhona, 57 Mass. App. Ct. 479, 482 (2003). A determination of unfitness requires careful consideration, in light of the unique facts in each case, of the parent's capacity to care for the child. See Freeman v. Chaplic, 388 Mass. 398, 405 (1983). "Unfitness" surpasses "ineptitude, handicap, character flaw, conviction of a crime, unusual life style, or inability to do as good a job as the child's foster parent" (footnotes omitted). Adoption of Katharine, 42 Mass. App. Ct. 25, 28 (1997). Instead, unfitness reflects "grievous shortcomings or handicaps that would put the child's welfare in" danger. See Petition of the New England Home for Little Wanderers to Dispense with Consent to Adoption, 367 Mass. 631, 646 (1975). The department bears the burden of proving parental unfitness by clear and convincing evidence. See Adoption of Lorna, 46 Mass. App. Ct. 134, 139 (1999).
The child's welfare is the paramount consideration in parental fitness determinations. See Petition of the Dep't of Pub. Welfare to Dispense with Consent to Adoption, 383 Mass. at 589. The judge must consider "whether the natural parents are currently fit to further the welfare and best interests of the child." Bezio v. Patenaude, 381 Mass. 563, 576 (1980). The parental unfitness and the best interests of the child are not mutually exclusive tests, but rather "reflect different degrees of emphasis on the same factors." Petition of the New England Home for Little Wanderers to Dispense with Consent to Adoption, 367 Mass. at 641.
a. Criminal history. The father first argues that the judge erred by relying on "stale" information about the father's criminal history when evaluating his parental fitness. Although criminal convictions do not conclusively demonstrate parental unfitness, the judge may consider such convictions "[t]o the extent [that they] bear[ ] on fitness." Care & Protection of Frank, 409 Mass. 492, 495 (1991).
Here, the judge noted that the father, who describes himself as a "career criminal," has a criminal record that spans nearly twenty years, and includes several violent offenses against both the mother and other individuals.[3] The judge also emphasized that the father was unavailable as a parent for most of the children's lives due to his many incarcerations.[4] The judge further noted that the father's "serial incarcerations left the children in the care of [the] [m]other who, by her own admission, was unfit to parent them." Given the instability that the father's absences from the home created, and the father's demonstrated history of violence toward others, the judge correctly considered the impact of the father's criminal history on his present parental fitness. See Adoption of Frank, 409 Mass. at 495 (convictions relevant as they "bear[ ] on fitness"); Care & Protection of Quinn, 54 Mass. App. Ct. 117, 126 (2002) (suggesting past violent crimes relevant to present fitness).
b. Domestic violence. Next, the father argues that the department failed to show that he has a present "propensity for domestic violence," and contends that the judge's findings regarding the father's history of domestic violence are not supported by the record. "[W]itnessing domestic violence, as well as being one of its victims, has a profound impact on children." Custody of Vaughn, 422 Mass. 590, 599 (1996). Accordingly, "[v]iolence within a family is highly relevant to a judge's determination of parental unfitness and the best interests of the children," and "a judge must consider issues of domestic violence and its effect upon the children." Adoption of Gillian, 63 Mass. App. Ct. 398, 404 n.6 (2005).
Here, extensive evidence at trial established the father's history of domestic violence. The judge noted that three women, including the children's mother, obtained abuse prevention orders against the father. Moreover, both testimony at trial and the G. L. c. 119, § 51B, reports (51B reports) in the record supported the judge's findings regarding several specific instances of the father's violence toward the mother.[5] For instance, the judge found that on July 7, 2010, the father threatened to kill the mother and choked her. Similarly, the judge found that on July 10, 2010, the father "put his hands around [the] [m]other's neck" during a confrontation, and that the mother had "visible bruising on her bicep," an incident for which the father was ultimately incarcerated. Additionally, the judge found that on May 31, 2011, the father punched the mother after the car in which they were riding ran out of gas. The judge noted that the oldest child observed the father "on top of mommy [with] his hand over her face," and that he previously observed the father hit the mother and the family dog. The judge emphasized that witnessing the father's violence had placed the oldest child in fear.
Significantly, the judge noted that the father has refused to acknowledge his past and present issues with domestic violence, and has failed to engage in services to address those issues. The judge concluded that the father's unwillingness to address his past issues with domestic violence placed the children at present risk for abuse.
Contrary to the father's contentions otherwise, these facts all provide ample support for the judge's finding that the father's past domestic violence contributed to present unfitness, especially in light of the severity of these incidents, the oldest child's direct observations of the father's violence, and the grave psychological consequences of children observing domestic violence. See Custody of Vaughn, 422 Mass. at 599 ; Adoption of Gillian, 63 Mass. App. Ct. at 404 n.6.[6]
c. Unstable housing and income source. Next, the father argues that the judge improperly considered his lack of income and appropriate housing in relation to his parental fitness.
Given the importance of stability in children's lives, the judge may properly consider whether parents will be able to "assume all parental responsibilities" and provide "the stable and continuous care and nurturing [children] need[ ] and will continue to need" as part of the overall fitness determination. Adoption of Nancy, 443 Mass. 512, 517 (2005). Judges may consider the lack of appropriate housing or adequate financial stability as part of this evaluation. See Adoption of Vito, 431 Mass. 550, 555 (2000) ; Adoption of Anton, 72 Mass. App. Ct. 667, 676 (2008).
Here, the judge found that the father lived with his new wife, who he had known for five months before marriage, in a "small one bedroom apartment." The judge also found that the father was not on the lease for the apartment, and that the apartment would not be large enough for the children. Significantly, the judge also noted that the children had never lived with the father for an extended period of time due to his frequent incarcerations.
Additionally, the judge found that the father has no steady source of income outside of worker's compensation benefits, and that the father's testimony that he had other sources of income was not credible. Moreover, the judge found that the father's current wife has no income, but pays the majority of the couple's expenses from her personal savings account. The judge also found that the couple has a negative income of approximately $1,000 each month.
Given the lack of an appropriately-sized living space for the children, the father's inexperience living with his children, and the father's precarious financial situation, the judge properly concluded that the father would be unable to provide adequate, consistent resources for his children. See Adoption of Nancy, 443 Mass. at 516.
2. The department's reunification efforts. The father next argues that the department failed to make reasonable efforts to reunify him with his children. When contemplating the termination of parental rights, the judge must determine whether the department made "reasonable efforts" to reunify the family. See G. L. c. 119, § 29C ; Adoption of Ilona, 459 Mass. 53, 60 (2011). The judge must weigh that evidence, however, alongside "[e]vidence of parents' refusal to cooperate with the department, including failure to maintain service plans and refusal of counseling programs." Adoption of Rhona, 63 Mass. App. Ct. 117, 126 (2005). See Adoption of Zak, 87 Mass. App. Ct. 540, 544 (2015).
Here, there was ample evidence, including the father's testimony, demonstrating that the father did not fulfill his obligation to comply with the department's service plans for reunification. The father missed several visits with his children because he failed to confirm the dates with the department's social worker, missed a foster care review meeting because he chose to go on a fishing trip, missed a meeting with the department's social worker because he chose to go to the recording studio, and missed two separate trial days without a credited excuse. Moreover, the father violated the terms of his probation in 2015, and was reincarcerated. The judge noted that the father did not comply with his service plans either while incarcerated or after his release, and failed to bring any difficulties that he had with compliance to the department's attention. The judge properly concluded that the father's inability to "maintain[ ] consistency in his own services" was predictive of his inability to consistently maintain services for the children's benefit. See Adoption of Zak, 87 Mass. App. Ct. at 544.
The father also argues that the department's service plans did not address any current parenting deficiencies. The father contends that mental health, substance abuse, and domestic violence evaluations were inappropriate because those issues did not affect him at the time that the department created the plans. As previously discussed, however, the judge found overwhelming evidence of the father's past issues with domestic violence, and noted that the father's probation violation was alcohol-related. Moreover, the department's social worker met with the father to create a service plan, and the father had an opportunity to comment or make changes to the plan, but declined to do so.
Additionally, the father argues that the department did not effectively facilitate visits with his children. The judge found that although the children refused to visit with the father beginning in December, 2017, the department still tried to convince the children to see the father. Moreover, the judge emphasized that the father did not take advantage of the opportunities that he did have to spend time with the children, and suggested that the father's unwillingness to accommodate the children's visits demonstrated an inability to "prioritize[ ] [the children's] needs over his own." As the judge noted, given the father's own lack of effort to strengthen his bonds with the children, the father's claims regarding the department's reunification efforts hold little weight. See Adoption of Serge, 52 Mass. App. Ct. 1, 9 (2001).
3. Posttermination visitation. Finally, the father contends that the judge exceeded her authority by denying the father posttermination visitation. We review a judge's decision regarding posttermination visitation for abuse of discretion. Adoption of Zander, 83 Mass. App. Ct. 363, 365-366 (2013). After finding a parent unfit, "the decision whether to grant post[termination] visits must be left to the sound discretion of the trial judge." Adoption of John, 53 Mass. App. Ct. 431, 439 (2001). A judge's decision to order posttermination contact must be "grounded in the over-all best interests of the child, based on emotional bonding and other circumstances of the actual personal relationship of the child and the biological parent, not in the rights of the biological parent nor the legal consequences of their natural relation." Adoption of Vito, 431 Mass. 550, 562 (2000).
Here, the judge specifically found that there was "no evidence to suggest that [posttermination] visits with [the] Father would be in the children's best interests and indeed the children do not wish to visit with [the] Father." Accordingly, the judge acted within her discretion by terminating the father's parental rights, and by denying posttermination visitation, given the judge's exhaustive findings regarding the father's unfitness.[7]
Decrees affirmed.

The judge terminated the mother's parental rights after she stipulated to unfitness, and she is not a party to this appeal.

Although the father claims that he has not committed any new criminal offenses since 2012, as the judge noted, the father was reincarcerated for a parole violation in 2015, further extending his absence from the children's lives.

The father suggests that the judge improperly relied on hearsay statements contained in G. L. c. 119, § 51A, reports (51A reports). The father correctly notes that 51A reports "may not be considered substantively" in a care and protection proceeding. See Care & Protection of Inga, 36 Mass. App. Ct. 660, 663 (1994). However, the record also contains 51B reports, which "may be considered for statements of fact." Id. at 664. The 51B reports in this record detail several instances of domestic violence by the father.

Although the father claims that the department was aware that he "had completed a domestic violence program during his incarceration," that contention only appears to be supported by the father's self-reporting, rather than any documentation from the prison.

To the extent that we do not address the parties' other contentions, "they 'have not been overlooked. We find nothing in them that requires discussion.' " Department of Revenue v. Ryan R., 62 Mass. App. Ct. 380, 389 (2004), quoting Commonwealth v. Domanski, 332 Mass. 66, 78 (1954).